| | | |
|---|---|---|
| CODY M. RAWSTRON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:13-cv-119-NT |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff, appearing *pro se* in this Social Security Disability ("SSD") appeal, has submitted a narrative "Fact and Error Sheet," ECF No. 20, raising several possible issues for review by this court. After careful consideration, I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, Finding 1, Record at 12; that she suffered from ulnar neuropathy of the left elbow, mild lumbar degenerative disc disease with possible L/4 encroachment with tingling and pain in the lower extremities, tension-related

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), as amended effective January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the defendant to file a written opposition to the itemized statement. Oral argument was held before me on March 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

headaches causing sleep deprivation, and obesity, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 12-13; that she retained the residual functional capacity ("RFC") to perform work at the light exertional level, except that she should never climb ladders, ropes or scaffolds, could occasionally climb, balance, stoop, kneel, crouch, or crawl, and should avoid hazards such as irregular, uneven walking surfaces, Finding 5, *id*. at 14-15; that she could return to her past relevant work as a hostess, mail sorter, counter person, and cashier, Finding 6, *id*. at 19; and that, therefore, she had not been under a disability, as that term is defined in the Social Security Act, at any time from January 31, 2008, the alleged date of onset of disability, through the date of the decision, January 18, 2012, Finding 7, *id*. at 19. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of

past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's statement of errors ("Fact and Error Sheet") also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff's narrative statement of errors (ECF No. 20) lists 23 bullet points. I will address them all, although some will be grouped, resulting in an order that varies from that of the statement. I emphasize, as a starting point, that this is an appeal from the decision of an administrative law judge within the Social Security Administration, which means that this court can only consider that decision and the information that was before the administrative law judge who made it. Any evidence or information that was not available to the administrative law judge cannot be considered by this court.

In addition, even if this court were to find sufficient evidence in the record upon which to overturn the commissioner's decision, it could not do so as long as there is substantial evidence in the record to support that decision.

### A. Mental Impairments

The plaintiff contends that the administrative law judge should have found her anxiety disorder and depression to be severe impairments. Fact and Error Sheet ¶ 2. It is difficult to evaluate her assertions that her anxiety and related panic attacks "keep [her] from concentrating and focusing and have caused problems significant enough to interfere with {her] daily living and fulfillment of [her] responsibilities," *id*., because she does not cite any evidence in the record to support these statements. The administrative record in this case is 855 pages long, and the court cannot search through it seeking support for a party's claims, even when that party appears without an attorney. *See, e.g., Lacadie v. Town of Milford*, Civ. No. 07-101-B-W, 2008 WL 1930410, at *6 n.8 (D. Me. May 1, 2008) ("Courts are not required or even expected to independently sift through the record in search of evidence that might salvage a *pro se* plaintiff's case."). This court's Local Rule 16.3(a) directs parties involved in Social Security appeals to provide page references to the administrative record, which the plaintiff has not done.

The administrative law judge found that the plaintiff had mild restriction in activities of daily living, Record at 14, and his description of the underlying evidence is accurate. *Compare* Record at 14 *with id*. at 201-08. Regarding concentration, the administrative law judge correctly reported that the plaintiff was described during a mental status examination in January 2009 as oriented in all spheres with normal memory and immediate recall, with no evidence of an altered cognitive state. *Id*. at 15, 354. In this regard, the plaintiff asks the court to read "the report from 2011." Fact and Error Sheet ¶ 11. The defendant identifies a September record of a follow-up visit for treatment of migraine headaches as the likely document to which the plaintiff refers. Defendant's Opposition to Plaintiff's Statement of Specific Errors ("Opposition") (ECF No. 25) at 5. If that is in fact the correct document, the care provider, a nurse practitioner who is not an

acceptable medical source under Social Security regulations, 20 C.F.R. § 404.1513(a), does not state any conclusions about the plaintiff's concentration or memory lapses. Record at 836-37.

The final criterion for assessing mental impairment that is mentioned in the plaintiff's Fact and Error Sheet is social functioning. Fact and Error Sheet ¶¶ 8-10. The plaintiff believes that the administrative law judge "misread the recitation of statements made at the hearing and or the documentation." *Id.* ¶ 9. She asserts that she "clearly said" at the hearing that she was unable to attend church as often as she should and had to use a telephone connection on occasion, and informs the court that she attends her church's annual Assemblies because "[i]t takes something very serious for us to be allowed to miss" them, and she has been unable to stay for the whole program over the past five years. *Id.* ¶ 10. The plaintiff did testify that she "tend[ed] not to go [to religious meetings scheduled a few times a week] because [she couldn't] sit that long, so [she is tied] in over the phone." Record at 73. The administrative law judge did not rely solely on the plaintiff's own earlier statements about her church attendance, *see id.* at 205, however, in evaluating the degree of difficulty experienced by the plaintiff in social functioning. *Id.* at 14. Even if he mischaracterized the plaintiff's church attendance,[2] the other factors he considered are sufficient to support his conclusion that the plaintiff had mild difficulties in this area.

Paragraph 3 of the plaintiff's submission asserts that the administrative law judge incorrectly restates an unidentified doctor's notes by "stat[ing] that I had four panic attacks in October 2009. . . . What happened was that I had had four attacks the day before I went in to see the physician and they all took place on one day." Fact and Error Sheet ¶ 3. The administrative law judge's opinion says, "In October 2009, she reported having four panic attacks (Id. p. 85)."

---

[2] Later in the opinion, the administrative judge accurately observed that the plaintiff "is involved in her church but mostly talks on the phone with people from her church." Record at 15.

Record at 13. While not as specific as one would like, this statement is not incorrect, based on the plaintiff's representation. In any event, the correction makes no difference in the analysis of the plaintiff's application for benefits, so far as I can see.

Paragraph 4 of the Fact and Error Sheet begins with the statement that the plaintiff is confused by "paragraph 1 on page 4 in the report." I assume that this is a reference to the first full paragraph on page 13 of the record. I am unable to tell how much of the information in this lengthy paragraph of the plaintiff's submission was made known to the administrative law judge and how much is a post-hearing explanation. In any event, the administrative law judge does not appear to have placed much weight on the specific entries in this relatively short paragraph of his opinion in reaching his conclusions, and none of the information provided by the plaintiff requires a different outcome for her claim, which is the requirement for a successful court appeal from a denial of Social Security benefits at Step 2 of the sequential evaluation process. *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at * 4 n.3 (D. Me. Jan. 19, 2010) ("[T]he established law in this district [is that] an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

In paragraph 5, the plaintiff asserts that the administrative law judge "states that I am a 'cutter'. I felt this was suggesting multiple incidents of cutting behaviors when there was only one incident." Fact and Error Sheet ¶ 5. The record to which the administrative law judge refers to support his statement that "[t]he claimant has a history of cutting on herself, especially as a teenager but described a cut in late 2010 as "I was acting out" (Exhibit 14F), Record at 13, is a medical record note by J. Timothy Degrinney, MD, dated November 5, 2010, that states, *inter alia*: "Recent self cutting of left wrist for which she was seen in the ER. 'I was acting out'." *Id*.

6

at 820. Neither party directs the court to any record evidence of the number of cutting incidents when the plaintiff was a teenager, but the administrative law judge is entitled to rely on statements in the medical record. The inference drawn by the administrative law judge from this information was perhaps unfortunate, and offensive to the plaintiff. However, I see no indication that the inference played any part in the RFC that the administrative law judge assigned to the plaintiff.

Paragraph 6 of the Fact and Error Sheet addresses the last paragraph on page 13 of the record, in which the administrative law judge correctly sets out the criteria for judging claims of mental impairment. There is nothing specific to the plaintiff in this paragraph, and no basis for vacating the decision.

The plaintiff's final concern with the administrative law judge's treatment of her mental impairments is found in paragraph 12 of her submission, where she challenges what she characterizes as the administrative law judge's opinion that "[t]reatment should focus on treating the psychiatric condition and limiting the use of analgesics and use of medication to suppress the headaches." Fact and Error Sheet 12. This sentence appears at page 15 of the record, followed immediately by the parenthetical notation "Ex. 16F pg. 7." Exhibit 16F is a series of the plaintiff's medical records from Maine Medical Partners, Neurology. Record at 831. At that page of the record (Ex. 16F p. 7), a nurse practitioner stated that "[m]anagement is geared toward treatment underlying psychiatric disorder, limitation of analgesics, trials of suppressant agents." *Id*. at 837. That entry, describing the plaintiff's then-current treatment, is fairly approximated in the administrative law judge's statement. The administrative law judge is not stating his own opinion, which would be a prohibited lay interpretation of raw medical evidence. *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). The plaintiff also offers

7

additional factual material in this paragraph (paragraph 12); I am unable to tell whether this information was provided to the administrative law judge and, therefore, cannot rely on it in dealing with this appeal.

## B. Other Impairments

In the first paragraph of her Fact and Error Sheet the plaintiff challenges the administrative law judge's statement "that [her] migraines are the cause of [her] sleep deprivation[.]" She asserts that this information "is no where in my medical records." For the reasons already stated, the court is unable to verify this assertion, but the defendant is willing to concede that "[t]here is some indication in the record that sleep deprivation may have contributed to Plaintiff's headaches, rather than the other way around." Opposition at 7. As the defendant notes, however, it is the sleep deprivation, as well as the migraines, that is the cause of the plaintiff's impairment, and the precise manner in which one affects the other is not relevant to the question of whether she is disabled. This error does not affect the outcome of the plaintiff's claim for benefits, and it does not entitle her to remand.

A lengthy Paragraph 7 in the plaintiff's submission challenges the following paragraph of the administrative law judge's opinion:

> In activities of daily living, the claimant has mild restriction. The claimant is able to care for her personal hygiene and her two small children under the age of three. She cooks meals and does the shopping for food and clothing. Her husband helps with the housework because tasks take so long. However, she is able to do her own laundry and can change her sheets, albeit slowly. She is able to spend the day at the beach on occasion (Ex. 14F pg. 5).

Record at 14.

Again, it is not clear how much, if any, of the information presented by the plaintiff in Paragraph 7 was presented to the administrative law judge. Clearly, the plaintiff's statement

about a change to using paper plates and cups "[a]s of 6/10/13," Fact and Error Sheet ¶ 7, presents information that could not have been before the administrative law judge, whose opinion is dated January 18, 2012, Record at 20, and, therefore, may not be considered by the court. This paragraph also refers to events "[a]t the time of this writing," which is dated September 27, 2013, Fact and Error Sheet at [4], also well after the date of the administrative law judge's decision. In any event, the information presented in this paragraph of the plaintiff's submission at most seeks modification of the administrative law judge's findings rather than outright rejection.

Paragraph 13 of the plaintiff's submission challenges the statement in the administrative law judge's opinion that "[s]he used a TENS unit which made the pain worse." Record at 16. The plaintiff states "I have never said that to anyone and I continue to use it." She also takes issue with the administration law judge's later statement that "Maine[C]are would not pay for the patches so the claimant was not using the [TENS] Unit." *Id*. The administrative law judge cited Exhibit 8F in support of these statements summarizing the medical records.

The plaintiff herself testified that the TENS unit, when used on her arm, "actually caused more pain." Record at 61. Exhibit 8F includes a letter from Rosanne S. Crider, Nurse Practitioner, to Dr. Timothy DeGrinney stating that the plaintiff "continues with a TENS unit but she does not have the patches. Maine Care will not pay for the patches." Record at 489. The administrative law judge apparently was in error when he said that the plaintiff had stopped using the TENS unit. However, the plaintiff does not suggest that the administrative law judge would have been required to grant her benefits had this error not appeared in his opinion, and it does not appear at all likely to me that this error alone can bear the weight of a reversal of the administrative law judge's decision.

9

The plaintiff next asserts, Fact and Error Sheet ¶ 14, that "the facts may have been misinterpreted" in the following portion of a paragraph of the administrative law judge's opinion:

> For instance, in April 2009, she was seen at the emergency room for general malaise and vomiting. She was ten months post partum and was described as "otherwise healthy appearing". She remarked that she had recently been at a large gathering in the Augusta Civic Center with thousands of people and was concerned about having the flu (Ex. 1F pg. 3).

Record at 16. The plaintiff says:

> In April 2009 I went to the emergency room fearing I had the H1N1 flu. The reason being was that a week before I had been to one of my assembl[ies] (stayed for less than half the program) and a few days later I was quite ill with flu-like symptoms. I started to feel worse and then heard from others who had also attended the assembly that two members had come down with the H1N1 flu. So of course I felt the best course of action would be to be checked for this illness.

Fact and Error Sheet ¶ 14. I see no significant conflict between the two versions for purposes of the plaintiff's application for benefits, and certainly nothing requiring remand.

In Paragraph 15 of her submission, the plaintiff states "I would also like my record to reflect that so far I have found 6 dates to be inaccurate. This is a very important case for me and I want all information to be accurate so that a fair decision can be made on my case." *Id*. ¶ 15. Fairness and accuracy are the goals for the court as well. However, without any specification of the particular errors,[3] it is not possible for the court to determine whether those errors had a sufficient impact on the administrative law judge's decision to require a remand.

---

[3] At oral argument, the plaintiff specified one instance of an erroneous date, when she believes that the administrative law judge wrote that she suffered from post-partum depression a year after giving birth, but she was never diagnosed with post-partum depression. It appears to me that the administrative law judge said only that she was seen in a hospital emergency room 10 months after giving birth ("post partum"), Record at 16, but, in any event, if the emergency room visit did not take place 10 months after the plaintiff gave birth, that error does not appear to me to require the court to vacate the commissioner's decision and send the matter back to the commissioner for further action, which is the only remedy that this court can provide in Social Security appeals.

Paragraph 16 of the plaintiff's submission appears to be additional information offered to explain her conduct to the judge. It is written in the present tense and appears to present information that could not have been presented to the administrative law judge. For the reasons already stated, the court cannot consider such information. The same is true of Paragraphs 17 and 18. Fact and Error Sheet ¶¶ 16-18.[4]

Paragraph 19 concerns a fall in November 2008 and subsequent hospitalization, followed by "bed rest for the remainder of my pregnancy." Any symptoms and treatments that did not continue after the pregnancy were in fact temporary, despite the plaintiff's assertion to the contrary. If she means to suggest that the sequelae of the fall were still causing her leg and hip pain well after the birth, she does not specify those impairments and does not cite any medical evidence in the record to support her suggestion. She also fails to inform the court whether the administrative law judge failed to mention this pain – assuming that it was reported to him and supported by medical records – or whether he erred in some other fashion in dealing with it.

Paragraph 20 again provides factual information, without any time reference, so the court is unable to determine whether these events occurred before the date of the administrative law judge's opinion and whether this information was presented to him. It is not tied to the administrative law judge's opinion. It provides no basis for remand.

Paragraph 21 of the plaintiff's submission states that she wants to be checked for fibromyalgia. This is not an issue that may be brought to this court on appeal, where the court is reviewing what the administrative law judge did, based on the information that was known to him at the time.

---

[4] At oral argument, it became apparent that the plaintiff felt that she was rudely treated by the administrative law judge at the hearing.

Paragraph 22, in its first sentence, restates evidence that was before the administrative law judge. I cannot tell whether the second sentence was also before him. In any event, neither sentence suggests any reason to reverse the administrative law judge's decision.

Finally, Paragraph 23 "question[s] a physician note to avoid all exposure to noise[]" because the plaintiff does "not understand this statement or why it was made." Again, it is not the role of a court to comb the administrative record to help a party understand what was said in an administrative ruling. An appeal may not be brought to a court for this purpose. In addition, the RFC assigned to the plaintiff by the administrative law judge did not include this limitation, Record at 14-15, so it is not relevant to any appeal of his decision.

That being said, the administrative law judge refers to Dr. DeGrinney as the source of a limitation to "avoid all exposure to noise." *Id.* at 18. On a Physical Residual Functional Capacity Assessment form dated December 23, 2011 (as cited in the administrative law judge's opinion), Dr. DeGrinney checked a box under the heading "avoid all exposure" with regard to noise, *id.* at 853 (section F.5), but did not explain, despite the form's request to do so, how the evidence supports this limitation.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,*

*within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*


Dated this 28th day of March, 2014.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
